[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant, Dan E. Nuding [Mr. Nuding], appeals from the judgment of the Common Pleas Court of Mercer County, Ohio, Domestic Relations Division, which granted plaintiff-appellee's, Kathi S. Nuding [Mrs. Nuding], request for a divorce.
Mr. and Mrs. Nuding were married on August 29, 1981. On March 22, 1996, Mrs. Nuding filed a complaint requesting a divorce. They are the parents of four children. The eldest, James Nuding, was an adult at the time of the filing and the remaining children, Amanda, Danielle, and Jesselle, were minors.
A divorce hearing was held on February 27, 1997 before a magistrate. At this time, the issues of property division, debt responsibility and parental rights and responsibilities were litigated. In March 1997, the Magistrate held an in camera
session with the three daughters to receive their input on the present and contemplated living arrangements. Ultimately, on April 22, 1997, the Magistrate recommended that the divorce be granted. The division of property, debts, and parental rights and responsibilities were detailed in the Magistrate's written findings of fact and conclusions of law.
Thereafter, Mr. Nuding filed his objection to the Magistrate's decision and requested trial court review of the matter. At this time, a transcript of the February 1997, proceeding was requested. On July 15, 1997, a transcript of the divorce proceeding was filed. Upon review of this transcript and the record, the trial court approved and adopted the recommendations of the Magistrate in an entry filed on July 24, 1997. The transcript of the Magistrate's in camera interview with the children was subsequently filed by court reporter on August 12, 1997.
The final judgment entry of divorce was filed on August 22, 1997. Mr. Nuding filed an appeal with this Court. In support of his appeal, he lists the following assignments of error:
 I. The trial court erred in determining what real estate at issue was marital/separate property and in dividing the relative "equity" between the parties [sic].
 II. The trial court erred in approving the Magistrate's decision regarding custody of the parties' children without reviewing the transcript or the interview of the children by the magistrate.
 III. The trial court erred in determining responsibility of debts between the parties.
Mr. Nuding's first and third assignments of error question the trial court's determinations of property classification and debt responsibility. Upon the end of a marriage, property is divided according to R.C. 3105.171. This statutory provision requires a court to determine whether property owned by the spouses is classified as martial or separate property and establishes guidelines to facilitate the decision process. R.C.3105.171(A), (B). Thereafter, the court is instructed to distribute the property equitably. Id.; R.C. 3105.171(C);Shapiro v. Shapiro (1992), 83 Ohio App.3d 744, 747.
Specifically, the factors detailed within R.C. 3105.171(A) determine the marital or separate classification of property. Marital property is defined in R.C. 3105.171(A)(3)(a), which states:
"Martial property" means, * * * all of the following:
 (i) All real and personal property that currently is owned by either or both spouses * * * and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage;
 (iii) * * * all income and appreciation on separate property, due to labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]
Separate property is that which meets the standards of R.C.3105.171(A)(6)(a):
 [A]ll real and personal property and any and all interest in real and personal property that is found by the court to be any one of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
* * *
 (vii) Any gift of any real property or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
Separate property is excluded from the definition of marital property. R.C. 3105.171(A)(3)(b) and R.C. 3105.171(A)(6)(b) mandates that:
 The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
Further guidance for determination of marital and separate property divisions is found in R.C. 3105.171(H), which states that:
 the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property.
Instead, the couple's total circumstances are reviewed. Mayer v.Mayer (1996), 110 Ohio App.3d 233, 236.
In domestic relations actions, a trial court is given broad discretion in its determination of marital property and liabilities and the division of such property. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, paragraph two of the syllabus. In making its determinations, the court is not only guided by law, but controlled by equity. R.C. 3105.171; Simoni v. Simoni (1995),102 Ohio App.3d 628, 635. If a court's findings are challenged on appeal, the reviewing court is limited to determining whether the trial court abused its discretion, based on a totality of the circumstances. Briganti v. Briganti (1984), 9 Ohio St.3d 220,222. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable and not simply an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Thus, we are bound to uphold the trial court's decisions unless an abuse of discretion is present.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. Moreover, as the Supreme Court of Ohio stated in Myers v. Garson (1993),66 Ohio St.3d 610, 615-616, reaffirming its reasoning in the case ofSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80:
 [A]n appellate court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court.
In this matter, a divorce hearing was held before the Magistrate in which seven persons testified. Both parties presented their arguments to the Magistrate regarding their relative interests in the marriage. At the conclusion of the hearing, the Magistrate compiled his recommendations for, among other things, the determination of separate and marital property and the division of the marital property. These findings consisted of a listing of the properties owned by the couple, the associated equity in the property, and the conclusion that:
 [t]he evidence fails to establish that an equal division of the real estate is not proper. [Mr. Nuding] shall receive the marital residence and the 81.64 acres. In order to come to an equal division, [Mr. Nuding] shall pay [Mrs. Nuding] $36,969.39 for her interest in said real estate.
The Magistrate also found that two of three disputed debts were debts of the marriage. The third debt was deemed to be the sole responsibility of Mr. Nuding. The trial court adopted these findings.
Pertaining to Mr. Nuding's first assignment of error, there are three parcels of real property in dispute. The first parcel is the 2.32 acres on which the martial residence is located. At the hearing, testimony was given that prior to his marriage, Mr. Nuding purchased this land and the residence on it for $12,000. The debt incurred by Mr. Nuding for the purchase of this home was retired before his marriage to Mrs. Nuding.
Absent transmutation, we find this parcel of land and the building on it were Mr. Nuding's separate property pursuant to R.C. 3105.171(A)(6)(a)(ii). Contrary to the apparent finding of the trial court, the fact that the parties subsequently mortgaged the property does not in any way alter the separate character of the property since the mortgages were not taken in order tofinance the purchase of the residence. While R.C.3105.171(A)(3)(a)(i)and (ii) provide that marital property can consist of either real property or an interest in real property owned by one or both spouses which was "acquired by either or both of the spouses during the marriage," the property in this case (the 2.32 acres) was not in any way "acquired" during the parties' marriage. Mr. Nuding merely posted this separate property as security for the repayment of a marital debt. The monies borrowed went to purchase other goods or services. It is these goods which became marital assets as payments on the debt were made using marital funds. The debt and repayment process had no transmutative effect on the separate property posted by Mr. Nuding as security. Had the mortgage been taken to finance the purchase of the 2.32 acres and this property was paid for using marital monies, the property would clearly qualify as a marital asset "acquired by either or both spouses during the marriage." See R.C.3105.171(A)(3)(a)(i) and (ii). This would be true even if the mortgage was originally the separate debt of one party prior to a marriage, to the extent that the marital monies contributed to the repayment of the debt. See, e.g., Rapose v. Rapose (March 24, 1995), Ashtabula App. No. 93-A-1768, unreported (finding Appellee's financial contribution to the repayment of a $30,000 bank mortgage loan originally secured by Appellant prior to marriage for the purchase of a $50,000 home, resulted in a proportional interest of the residence becoming marital property). Thus, since the money in this case was in no part used to purchase the residence, the house remains the separate property of Mr. Nuding. We find that the trial court abused its discretion in adopting Mrs. Nuding's argument that the property was converted into marital assets merely upon signing mortgages and assuming liability of the debts.
Having established the separate character of this property, it cannot be forgotten that appreciation on separate property due to labor, monetary, or in-kind contributions of either or both spouses occurring during the marriage is marital property. R.C.3105.171(A)(3)(a)(iii). Consequently, any appreciation effected by the remodeling of the house during the parties' marriage would correctly be considered marital property. The only evidence in the record attributes $8,000 of the $70,000 residential lot value to such joint remodeling efforts. Thus, Mrs. Nuding's contribution would equal $4,000 or 5.7% of the total value of the residential lot.
The second parcel of property at issue in this case is the 10 acre plat adjacent to the marital residence. The testimony and evidence gathered at the hearing in this case demonstrated that Mr. Nuding's parents deeded this property to both Mr. and Mrs. Nuding in 1985. The parties testified that this property was transferred so that it could be used for collateral purposes. Over the past fourteen years of this couple's marriage, these pieces of property were subject to six mortgages, ranging from approximately $8,000 to $68,000. Mr. and Mrs. Nuding were signatories and shared liability for the debt. While there was also testimony of an informal agreement among Mr. Nuding, his parents, and his brother that the acreage was to be an advancement of Mr. Nuding's inheritance, the trial court apparently was not persuaded on this point. Given the absence of documentation affirmatively demonstrating the advancement and the fact that the deed to the property demonstrates an intent by Mr. Nuding's parents to gift the property to both parties in this case, we find no abuse of discretion in the trial court's classification of this property as marital.
The final disputed parcel of property is 81.64 acres of farmland. The evidence presented included a land contract in which approximately 86.5 acres were transferred to R D Farms in 1983 from Mr. Nuding's parents. This entity is a partnership between Mr. Nuding and his brother. According to the terms of this contract, the purchase agreement for this property required the brothers to make a $20,000 down payment and additional payments totalling $40,000. The brothers testified that they equally divided the purchase costs, thus Mr. Nuding was responsible for an initial $10,000 and future payments amounting to $20,000. The land contract further stated that the difference between the required payments and the value of the property, $132,000, was considered a gift to be divided by the brothers:
 Seller hereby makes a gift to Buyers [R D Nuding Farms] individually of $66,000 which is the difference between the contract price and the appraised price hereof. Seller will file a gift tax return thereon.
Mrs. Nuding was not mentioned within the land contract either as a party or spouse. Further testimony addressed the source of Mr. Nuding's funds applied to the financial obligations incurred with this acreage. Mr. and Mrs. Nuding also revealed that during the course of the marriage, they sold a total of 5.346 acres from this plot.
We find that the trial court erred in its conclusion that the 81.64 acre parcel was marital property. The terms of the land contract establish that $66,000 was intended to be a gift to Mr. Nuding. This contract was made between Mr. Nuding's parents and a partnership in which Mr. Nuding was an equal partner with his brother, with no reference to the partners' individual capacities or to their spouses. Nor does the evidence show any significant contribution or involvement by Mrs. Nuding in the appreciation of this property during the marriage. Thus, clear and convincing evidence within the terms of R.C. 3105.171(A)(6)(a)(vii) supports this value as a gift to Mr. Nuding alone and the trial court erred in not finding this parcel to be the separate property of Mr. Nuding. Consequently, to the extent specified above, as to the 2.32 acre and 81.64 acre parcels of land, the first assignment of error is sustained. In all other respects, this assignment of error is overruled.
The third assignment of error addresses the trial court's findings concerning three debts. The first two disputed debts were incurred by the parties' adult son for post-secondary education tuition and living expenses. Mr. Nuding contends that the trial court should not have considered these as debts of the marriage. The third debt is for a garden tractor owned by the couple which was used as collateral for a mortgage. Mr. Nuding was to retain this item upon the couple's divorce. In this case, Mr. Nuding argues that the trial court should have considered this to be a marital debt.
In regard to those debts which the trial court deemed marital, the testimony clearly established that the parties created these debts during their marriage. Further, Mr. Nuding was either present when the loan documents were signed or he had acknowledged and acquiesced to his family's undertaking of the debt. In fact, Mr. Nuding's testimony was that when he was presented the tuition loan documents, he was indifferent as to whether he or his wife should sign the forms.
Moreover, the evidence on this matter supports Mr. Nuding's sole responsibility for the $6,000 debt associated with the garden tractor. Just as Mrs. Nuding became responsible for the $6,000 debt on the car which the couple decided she would keep, Mr. Nuding incurred a comparable asset and liability. In sum, we conclude that the trial court did not err in equally dividing the debts between the couple and that competent and credible evidence exists for the court's findings. Thus, the third assignment of error is overruled.
The second assignment of error questions the trial court's ruling which designated Mrs. Nuding as the custodial parent of the party's three daughters. Mr. Nuding argues that the trial court did not properly review and determine whether the challenged Magistrate's finding of parental rights and responsibilities was supported by the evidence. He bases this argument on the fact that the trial court did not have before it the transcript of the Magistrate's in camera interview with the children prior to the trial court's determination of the issue.
As this Court stated in Williams v. Williams (1992), 80 Ohio App.3d 477,482,
 When a trial judge makes a decision regarding the custody of children and it is supported by a substantial amount of competent credible evidence, the decision will not be reversed absent an abuse of discretion. [Citation omitted.]
As previously stated, an abuse of discretion requires that the trial court demonstrate an unreasonable, arbitrary, or attitude.Blakemore, 5 Ohio St.3d at 219.
As evidenced by the record, the trial court adopted and affirmed the recommendation of the Magistrate on the basis of the divorce hearing transcript. The journal entry documenting the trial court's decision was filed before the court reporter filed the in camera interview transcript. Clearly this is error. The requirement for an in camera interview with the children, pursuant to R.C. 3109.04(B)(1), is rendered meaningless if the trial court does not, at the very least, review any transcript thereof before making its own custody determination.
Nonetheless, we can find no prejudice accruing to Mr. Nuding as a result of the trial court's failure to review the transcript,[1] nor does Mr. Nuding complain of any resulting harm. It is evident, however, that there was sufficient evidence presented at the divorce hearing to sustain the trial court's actions. At this hearing, evidence was presented which demonstrated Mrs. Nuding's ability to provide the supervision and attention which the two older daughters were allegedly not receiving from their father. The testimony given was that because Mr. Nuding worked third shift, he was unable to be home with the girls in the evenings. Mr. Nuding also permitted the girls to smoke in the house, although he wished they did not. Testimony was also presented that while his eldest daughter resided with her boyfriend's family for a month, Mr. Nuding failed to communicate with her more regularly than once a week. Finally, Mrs. Nuding stated that she thought the custodial parent issue should be revisited because the girls had expressed an interest in wanting to spend more time with her and live with her.
In short, the record demonstrates competent and credible evidence existed to support the trial court's decision of awarding Mrs. Nuding residential parent status of all three children. As a result, any error that the trial court made by reaching its parenting decisions without having first reviewed the in camera
interview transcript was harmless. Mr. Nuding's second assignment of error is overruled.
Mr. Nuding's second and third assignments of error are overruled. However, as the first assignment of error is overruled in part and sustained to the extent noted, this matter is remanded for a redetermination of the overall property division in light of our finding that the 2.32 acres and the residence located thereon are the separate property of Mr. Nuding (appreciation affected by the remodeling of the residence to be considered marital property), and that the 81.64 acreage is the separate property of Mr. Nuding. Accordingly, the judgment of the Common Pleas Court of Mercer County, Ohio, Domestic Relations Division, is affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part and cause remanded.
HADLEY, J., concurs.
SHAW, P.J., concurs in part and dissents in part.
[1] A transcript of the in camera interview appears in the documents presented to this court by Appellant. However, the transcript lacks a file stamp which would indicate that it has been entered into the record for court consideration.