OPINION
Defendant-Appellant, Sue Warnecke ("Appellant"), appeals a decision by the Putnam County Common Pleas Court, Domestic Relations Division, overruling a motion to designate her as the residential parent of the parties' minor son and suspending sentence on motions of contempt filed between she and Plaintiff-Appellee, John Warnecke ("Appellee"). On appeal, Appellant maintains that the trial court's denial of her request to be designated residential parent is contrary to the manifest weight of the evidence; however, the record herein contains competent, credible evidence supporting the trial court's finding that no change in circumstances has occurred since the original custody decree. Furthermore, although Appellant contends that she is entitled to a 1992 automobile selected during the court ordered personal property distribution, the record reflects that it was purchased for the parties' oldest daughter and that it was not included in the numbered list of personal property that the parties jointly created to allocate such property, which was previously filed with the court. As such, the trial court did not abuse its discretion by ordering the parties' to transfer only those items included in the numbered list.
The facts pertinent to issues raised on appeal are as follows. The parties were divorced on February 1, 2000, and thereafter, Appellee was designated the residential parent of the parties' twelve-year-old son Ross. Appellant moved to transfer residential parent status on May 2, 2001, claiming that a change in circumstances had occurred since the court's initial custody decree and that the transfer would be in the child's best interest. Prior to the hearing on the motion, Appellee and Appellant filed contempt motions against each other for failing to transfer property pursuant to a property distribution order issued following the parties' divorce.
At the hearing on the motions, the trial court found that there had been no change in circumstances with regard to the parties or their minor son since the court's prior custody decree and denied Appellant's motion to modify custody. Moreover, the trial court sentenced both parties to ten days in jail for failing to abide by the court's prior property distribution order. This sentence was suspended on the condition that both parties exchange the property chosen by the other pursuant to the prior order. From this decision, Appellant appeals asserting two assignments of error for our review.
 Assignment of Error I The trial court's finding that there had been no change in circumstances is against the manifest weight of the evidence when Appellant established that Appellee denied Appellant contact with the child; denied Appellant information regarding the child; and failed to provide the child with counseling pursuant to court order.
Appellant maintains in her first assignment of error that the trial court's refusal to modify the prior custody award was against the manifest weight of the evidence because a change in circumstances has occurred since the prior custody decree. However, based upon the following rationale, we find that the trial court's decision was not against the manifest weight of the evidence.
R.C. 3109.04(E) provides that a trial court must not modify a prior custody decree unless it finds the following: 1) there has been a change in circumstances of the child; 2) a modification would be in the best interest of the child; and 3) the harm that would result from the change is outweighed by the benefits that will result from the change.[1] The determination of whether a change in circumstances has occurred is a threshold finding that must be determined prior to weighing the other factors.[2]
R.C. 3109.04(E)(1)(a) states, in pertinent part, that
 [t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the prior decree, that a change has occurred in the circumstances of the child * * *.
The intent of this provision is to "spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment."[3] Additionally, this Court has noted that a change must be substantial, not slight or inconsequential.[4]
In determining whether a change in circumstances has occurred, a trial judge, as the trier of fact, must be given wide latitude to consider all issues concerning a potential change,[5] and if competent, credible evidence supports the trial court's findings, its decision will not be reversed on appeal as being against the manifest weight of the evidence.[6] Additionally, in custody modification cases, an appellate court must give the trial court the "utmost respect"[7]
because it has the best opportunity to gauge the credibility, attitude, and demeanor of each witness.[8]
Appellant lists several occurrences that she claims support her contention that a change in circumstances has resulted since the initial custody determination. The majority of her contentions revolve around the child, Ross', medical needs. Specifically, Appellant asserts that his health has deteriorated, that his prescribed medication is not being provided, and that Appellee does not inform her or include her in medical and counseling decisions concerning the child.
Appellee's testimony at trial indicates that Ross' medical needs are being met and that he is being provided with the medication prescribed by his doctors. Appellee further testified that, pursuant to the trial courts' initial custody order, he has attempted to mail letters to Appellant concerning Ross' medical situation, that Appellant has not responded to this correspondence, and that certified mail has been returned. Additionally, based upon Appellant's own interference with Ross' medical care, Appellee filed a motion seeking a restraining order to prevent interference with Ross' medical care. Moreover, while Appellant claims that Ross has not been in counseling for several months, violating a prior court order, testimony indicates that counseling was terminated because Appellee failed to contribute her share of the cost; notwithstanding, at the time of the hearing Appellee had independently arranged for Ross to meet with a psychiatrist.
Appellant further maintains that a finding of a change in circumstances is warranted because Appellee has interfered with visitation between she and Ross. Although there is a well-settled rule in Ohio that a custodial parent's interference with visitation by a noncustodial parent may be considered as part of a change in circumstances, which would allow for modification of custody,[9] the evidence relating to this issue is conflicting, and therefore we are precluded from finding that the trial court's decision was against the manifest weight of the evidence.
Appellant testified that she was denied visitation on Mother's Day; however, in subsequent statements she admits to receiving visitation that day. Moreover, Appellant avers visitation was denied on nights that Ross had baseball games; however, Appellee stated that Appellant would attend a game before it was over and expect Ross to leave early to begin visitation. Upon Ross' refusal and at the urging of other parents to allow Ross to continue playing, Appellant would leave, resulting in Appellee taking Ross home. Appellant further asserts that she was to pick Ross up from summer camp; however, because she was two hours late, Appellee took him home. Appellant testified that there were at least six additional instances Appellee denied visitation; however, based on the previous evidence, the trial court was clearly entitled to determine that this self-serving statement lacked credibility.
Appellant also argues that Appellee cuts her visitation short or visitation has been postponed due to Ross' raging temper, and, as a related contention, that Ross has heightened behavioral problems while in her care. Testimony before the trial court supports that Appellant has ended visitations early by taking Ross home because of such behavior, and on other occasions Ross demands that his father pick him up early after becoming highly belligerent with his mother. Appellant admitted having requested Appellee to pick up Ross early because of poor behavior, and on one occasion, Appellee sent a letter to Appellant stating that she did not want to exercise her four-day visitation because Ross may be abusive to her. These same behavioral problems and Ross' apparent dislike for visiting his mother were raised before the trial court during the original proceedings and continue to be a recurring problem for the parties; however, the record does not support that Appellee is at fault for these occurrences or has failed to attempt to remedy this issue. As such, this does not amount to a change in circumstances according to R.C. 3109.04(E)(1)(a), since the purpose of requiring a change in circumstances is to prevent a constant relitigation of issues raised and considered when the trial court issued its prior custody order.[10]
Appellant further asserts that a change in circumstances has occurred because Ross is left unsupervised; however, Appellant admits that she has left Ross alone at her residence on more than one occasion. Moreover, Ross is watched by his older sister during the day when Appellee is at work, and, at times when she is not available, Ross has Appellee's work telephone number to call in case of an emergency. Furthermore, Appellee is employed one mile from his residence, can adequately assist Ross while he is at work, and has left work to do so when problems have arisen. Notwithstanding, Appellant's employment and living situation currently in place are the same conditions that were present when the trial court made its initial custody determination.
Finally, Appellant maintains that Ross is not currently involved in extracurricular activities that he formerly engaged in, and his grades at school are deteriorating, constituting a change in circumstances. Both parties, however, apparently place blame on the other for Ross not participating in extracurricular activities. Additionally, the record is virtually devoid of evidence regarding what impact, if any, these circumstances have had on Ross,[11] and Appellee presented no evidence that Ross' grades have in fact declined. Additionally, Ross' performance at school is a recurring source of contention between the parties, was discussed at the prior hearing, and, therefore, cannot constitute a change in circumstances.
In this case, there was conflicting evidence presented concerning a potential change in circumstances; however, we note that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact.[12] Accordingly, the trial court's responsibility is to resolve disputes of fact and weigh the credibility of the evidence;[13] thus, the trial court herein was free to give more credence to Appellee's version of events. Consequently, we find that the trial court's finding that no change in circumstances has occurred since the last custody determination was supported by competent, credible evidence and was not against the manifest weight of the evidence.
Accordingly, we find Appellant's first assignment of error to be without merit, and it is hereby overruled.
 Assignment of Error II The trial court erred as a matter of law when it terminated Appellant's right to receive personal property which she had selected pursuant to the trial court's order that the parties participate in an alternating "pick and choose" division of the property.
Appellant contends that she is entitled to a 1992 Mercury automobile pursuant to the trial court's April 7, 2000 judgment entry, which determined the means by which the parties would divide their personal property following their divorce. This entry ordered the parties, with assistance of counsel, to jointly compile a list of their personal property and take turns choosing who would retain each item. On May 16, 2000, Appellant filed a list of property prepared by her attorney numbered one through forty-nine with the court, representing the property that each party chose according to the April 7, 2000 order.
In response to the contempt motions filed with respect to the property distribution, the court ordered that the parties comply with the prior court order and deliver items one through forty-nine on the May 16, 2000 list of property to the respective party. In her second assignment of error, Appellant claims that she is entitled to the 1992 Mercury automobile that, while not included in the numbered list, was marked by her attorney in a "notation" at the bottom of the list as being chosen by her on the parties' fifth round of selections; despite the fact that the numbered list indicates she chose "building supplies" as her fifth choice.
We note that trial courts in domestic relations cases have broad discretion when determining the equitable settlement of property following a divorce.[14] As such, an appellate court will not reverse a trial court absent a showing of an abuse of discretion.[15] An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary, or unconscionable.[16] A decision is unreasonable if no sound reasoning process would support the decision.[17]
The trial court's entry ordering distribution expressly limited the property to be delivered as the numbered list of items. Testimony indicates that the car was not part of the numbered list and was not chosen during the selection process ordered by the court but, instead, was added in a notation after the fact. Additional testimony demonstrated that the automobile was purchased for the benefit of the parties' eldest daughter who, pursuant to an underlying agreement, was required to make the loan payments on the car. Though Appellee assisted her with some payments, the agreement evidences the parties' intent to facilitate their daughter's purchase of the vehicle. For these reasons, we find that the trial court did not abuse its discretion by expressly limiting the property to be transferred to those items contained in the numbered list.
Accordingly, we find Appellant's second assignment of error to be without merit, and it is hereby overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
SHAW, P.J., and BRYANT, J., concur.
[1] R.C. 3109.04(E)(1)(a); Clark v. Smith (1998), 130 Ohio App.3d 648,653; Thatcher v. Thatcher (Oct. 6, 1997), Mercer App. No. 10-97-08, unreported, citing In re Kennedy (1994), 94 Ohio App.3d 414,416-17.
[2] Clark, 130 Ohio App.3d at 653.
[3] Id. at 653-54, quoting Wyss v. Wyss (1982), 3 Ohio App.3d 412,416. See, also, Davis v. Flickinger (1997), 77 Ohio St.3d 415,418.
[4] Musson v. Musson (June 10, 1998), Hardin App. No. 6-98-01, unreported, citing Davis, 77 Ohio St.3d at 418.
[5] Davis, 77 Ohio St.3d at 416-17.
[6] Hoitt v. Siefer (1995), 105 Ohio App.3d 104, 107.
[7] Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[8] Clark, 130 Ohio App.3d at 656-57, citing Davis,77 Ohio St.3d at 418.
[9] Id. at 654, citing Holm v. Smilowitz (1992), 83 Ohio App.3d 757,773. See, also, Mitchell v. Mitchell (1998),126 Ohio App.3d 500.
[10] Clyborn v. Clyborn (1994), 93 Ohio App.3d 192, 196, citingPerz v. Perz (1993), 85 Ohio App.3d 374, 376.
[11] Stout v. Stout (Oct. 17, 2001), Union App. No. 14-01-10, unreported.
[12] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[13] Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.
[14] Mayer v. Mayer (1996), 110 Ohio App.3d 233, 236, citing Berish v.Berish (1982), 69 Ohio St.2d 318, 319.
[15] Id.
[16] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[17] AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161.