OPINION
{¶ 1} Appellant, Renrick Christopher Ardrey ("Renrick"), appeals the September 25, 2003 judgment entry — decree of divorce of the Common Pleas Court of Union County determining, in part, that the property on which the marital home is located is marital property and failing to find that certain appliances and a water softening system are the separate property of Renrick.
 {¶ 2} Renrick and Maria Beth Ardrey ("Maria") began living together in May, 1997. The parties were subsequently married on February 26, 2002. Both parties had been married previously and each owned separate property that was brought into the marriage. There were no children born into the marriage.
 {¶ 3} Maria filed a complaint for divorce in the Common Pleas Court of Union County on May 28, 2003. Renrick filed an answer and counterclaim for divorce on June 11, 2003. The final divorce hearing was held on September 9, 2003. The issues contested at the final hearing were the division of the marital property and the determination of whether certain property was separate or marital. Specifically, the parties made arguments regarding the property on which the marital home was constructed, the appliances in the marital home and some of the home furnishings.
 {¶ 4} Prior to the parties' marriage, Renrick owned the property on which the parties' marital home was constructed. Renrick purchased the real property in 1987 and he owned the property with his first wife until she transferred the property to him in 1995. The real property consists of three tracts of land Before the parties were married, Renrick transferred a one-half interest in the property to Maria. After the parties were married, they constructed their marital home on one of the tracts of land Maria contributed $19,400 from the sale of her prior home as a down payment on the parties' marital home. Renrick later cashed in two life insurance policies and contributed $20,633 to the construction of barns on one of the tracts of land At the final hearing, Renrick argued that he had a separate property interest of $46,000 in the real property. In addition, Renrick argued that he had a separate property interest in appliances and a water softening system in the marital home. Maria, on the other hand, asserted that Renrick had given to her a one half interest in the property as a gift.
 {¶ 5} Following the final hearing, the trial court issued an oral decision and ordered Maria's counsel to prepare the decree of divorce. The trial court determined that Renrick had made a gift to Maria by transferring title of the property into both parties' names. The court therefore determined that Renrick did not have a separate property interest in the real property on which the marital home was constructed. The trial court did not specifically address Renrick's claim that he possessed a separate property interest in the household appliances and water softening system. The trial court's judgment entry — decree of divorce, which incorporated the trial court's September 9, 2003 oral decision, was filed on September 25, 2003. It is from this judgment that Renrick now appeals, asserting the following two assignments of error.
The trial court's determination of marital and separateproperty issues regarding the real property is against themanifest weight of the evidence.
 The trial court abused its discretion in performing theproperty division with regard to the parties' real property.
 {¶ 6} In his assignments of error, Renrick argues that the trial court's determination of marital and separate property was against the manifest weight of the evidence and that the trial court abused its discretion by failing to award the separate property to Renrick.
 {¶ 7} In divorce proceedings, a trial court is required to make a determination as to whether property is marital or separate. R.C. 3105.171(B). R.C. 3105.171(A)(6) provides that property is presumed to be separate when it is found by the court to be any of the following: (1) an inheritance by one spouse by bequest, devise, or descent during the marriage; (2) property acquired by one spouse prior to the marriage; (3) passive income and appreciation acquired from separate property by one spouse during the marriage; (4) property acquired by one spouse after a decree of legal separation; (5) property excluded by a valid antenuptial agreement; (6) compensation paid to a spouse for the spouse's personal injury; and (7) any gift of property made after the date of marriage that is given to only one spouse.
 {¶ 8} The party seeking to have property declared separate has the burden of proof by a preponderance of the evidence.Kerchenfaut v. Kerchenfaut, 3d Dist. No. 1-01-14, 2001-Ohio-2259, 2001 WL 1023105, *3. The trial court's determination of whether property is marital or separate property will not be overturned unless it is against the manifest weight of the evidence. Id.; see, also, Barkley v. Barkley (1997),119 Ohio App.3d 155, 694 N.E.2d 989.
 {¶ 9} Renrick had the burden of showing by a preponderance of the evidence that the real property was his separate property as defined by R.C. 3105.171(A)(6). This court will not reweigh the evidence introduced at trial; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions.Kerchenfaut, 2001-Ohio-2259; Fletcher v. Fletcher,68 Ohio St.3d 464, 1994-Ohio-434, 628 N.E.2d 1343. In addition, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." Barkley,119 Ohio App.3d at 159, citing In re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181.
 {¶ 10} While R.C. 3105.171(A)(6)(a)(ii) provides that real property acquired by one spouse prior to the marriage is presumed to be separate property, a spouse can convert separate property into marital property by making an inter vivos gift to his or her spouse. Helton v. Helton (1996), 114 Ohio App.3d 683,683 N.E.2d 1157. In Ohio, the requisites of a valid inter vivos gift are "an intention on the part of the donor to make an immediate gift of property and delivery thereof to the donee, or to a third person as trustee for the donee, with relinquishment of all dominion and control over the property by the donor." Streeperv. Myers (1937), 132 Ohio St. 322, paragraph one of the syllabus, 7 N.E.2d 554. If any of the elements are absent, the gift fails. See Bolles v. Toledo Trust Co. (1936),132 Ohio St. 21, 4 N.E.2d 917. The donee has the burden of showing by clear and convincing evidence that the donor made an inter vivos gift.Helton, 114 Ohio App.3d at 686.
 {¶ 11} "When a court is asked to determine whether real property acquired prior to marriage was converted to marital property by one spouse granting another interest in the real property, the key issue is donative intent." Sweeney v. Sweeney
(June 21, 2000), 9th Dist. No. 19709, 2000 WL 799095, *2, citingHelton, 114 Ohio App.3d at 685; Moore v. Moore (1992),83 Ohio App.3d 75, 78, 613 N.E.2d 1097. Thus, the issue in this case is whether Renrick intended to make a gift of property to Maria when he transferred title of the property in question to both his and Maria's names. In his first assignment of error, Renrick argues that the trial court's determination that Renrick intended to make a gift to Maria of a one-half interest in the property was against the manifest weight of the evidence.
 {¶ 12} While both parties' names appear on the deed for the property on which the marital home was constructed, such fact is not determinative of whether the property is marital or separate. See R.C. 3105.171(H); Mayer v. Mayer (1996),110 Ohio App.3d 233, 673 N.E.2d 981. R.C. 3105.171(H) embraces a more flexible totality-of-the-circumstances test to determine whether transmutation of the separate property has occurred. Barkley,119 Ohio App.3d at 161. Therefore, such evidence may be considered on the issue of whether the property is marital or separate, but it is not conclusive proof of the issue. Id.
 {¶ 13} At the September 9, 2003 final hearing, the trial court inquired of the parties whether any of the real estate was non-marital. In response to the court's question, counsel for Renrick replied:
I think the parties in their depositions will acknowledge thatthe Defendant, Ren Ardery (sic), prior to the party's (sic)marriage owned that property, purchased in it (sic) 1998. We haveprovided opposing counsel with documentation showing that at thetime they began to build on this undeveloped property that thevalue of the property prior to the party's (sic) marriage was$46,000.00. And that would be our claim as to what is separateproperty of that appraised value.
Tr. 20. Counsel for Maria stated that the account by Renrick's counsel was incorrect and asserted the following:
During the course of the time that the parties were livingtogether Mr. Ardery (sic) transferred the deed of the propertyover into Mrs. Ardery's (sic) name and her name was at that timeJackson so at the time the parties built he had made a gift, hehad deeded a gift of premarital property to her prior to themarriage. Once they got married the deed and the property was inboth of their names. She indeed made a payment in the amount of$19,000.00 to build the house, but the property was owned by bothof them. And there was no loan, he just deeded the property overto Ms. Jackson at that time and they built the house and theybuilt the house (sic) prior to the marriage. In fact, the wholeproperty was owned pre-maritally by both of them.
Tr. 21.
 {¶ 14} The trial court then inquired of Renrick as to what he really intended to get out of the property. The following interaction took place:
Mr. Ardery (sic): Your Honor, this property I purchased inproperty (sic) in 1987. And prior to my marriage my first wifeand I owned this piece of property and she transferred to it tome in 1995 and I've owned this property since 1987, Your Honor.
 The Court: Except that you deeded your half of it, accordingto what you told me, that you have deeded half of it to her as agift.
 Mr. Johnson: [counsel for Maria] That is correct, Your Honor.
 Mr. Ardery (sic): I never deeded half as a gift. When we wentto get the appraisal done to build a house, Your Honor, thelending institution would not lend us money to build this houseunless we signed this over until this was in both of our names.And what I'm trying to do is claim that I had value in thatproperty prior to us signing it over to her.
 Mr. Johnson: It's a gift, Your Honor.
 The Court: I think you did have a value in it I would assumefrom what I've heard that you had value in it, somebody had valuein it.
 Mr. Ardery (sic): Right.
 The Court: The problem is if you deeded over half of it toher, I think that's the end of that as far as I'm concerned.
 Mrs. Ardery (sic): Yes, we came together to have what we havetogether which is the house and all three parcels of land and thebarn, without each other we couldn't have what we have todaybecause we pulled — we paid 50/50 right down the middle, paymentson the insurance, property taxes, upkeep.
 The Court: Well, not really, not according to your pleadings,but that's all right, I hear what you said, okay. * * *
Tr. 24-25.
 {¶ 15} After the court heard testimony from the parties regarding the value of the property on which the marital home was constructed, the court then determined the selling price of the house and the manner in which the proceeds would be distributed. In its September 25, 2003 judgment entry, the trial court ordered that the marital home be sold and that the proceeds from the sale be applied toward payment of the first and second mortgage on the home, the realtor's commission, costs associated with the sale of the property and any unpaid taxes up to the time of the sale. Next, the proceeds were to be used to pay the offsets of the parties. The court found that the parties' claims of payment of separate property into the marital home offset each other, with Renrick using the proceeds from cashed in life insurance policies in the total amount of $20,663.00 to build barns on the property and Maria using the proceeds from the sale of her prior home in the amount of $19,400 as a down payment on the parties' marital home. The trial court treated the marital home as solely marital property and ordered that the proceeds from the sale of the home, after payment of the costs, debts and offsets of the parties, to be equally divided between the parties.
 {¶ 16} In this case, the trial court heard conflicting testimony from Renrick and Maria as to whether Renrick intended to make a gift to Maria by transferring an interest in the property to her. There is no dispute in the record that the property on which the marital home was constructed was the separate property of Renrick prior to him transferring a one-half interest in the property to Maria. However, Maria asserted that Renrick made an inter vivos gift to her of a one-half interest in the property prior to the parties' marriage, which Maria had the burden of showing by clear and convincing evidence. Renrick, on the other hand, asserted to the trial court that he never intended to transfer a one-half interest in the property to Maria as a gift. Renrick stated that the lending institution would not lend him and Maria money to build the house until the deed was in both of their names. Neither party presented any evidence on the issue other than their own testimony.
 {¶ 17} The trial court found that the evidence presented was sufficient to demonstrate an inter vivos gift as to the one-half interest in the property. In reviewing the trial court's decision, we must adhere to the principle of law that judging the credibility of witnesses and the weight of the evidence are matters to be determined by the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus,227 N.E.2d 212. In this case, resolution of the issue upon review comes down to a question of witness credibility. We must afford the judgment of the trial court appropriate deference. The trial court's judgment is supported by competent, credible evidence in the record. Therefore, we hold that the trial court's determination that the property on which the marital home was constructed was marital property is not against the manifest weight of the evidence.
 {¶ 18} In addition, Renrick claims he should receive proceeds for appliances in the marital home that were purchased by him with separate funds. At the final hearing, Renrick asserted a separate property interest in a double oven, side-by-side refrigerator, dishwasher, Norge refrigerator located in the garage and a water softening system. The trial court inquired of the realtor which appliances were necessary for the sale of the home. The realtor stated that the refrigerator and water softening system were negotiable, but that the dishwasher and oven, and anything else that was attached, had to remain with the home. The trial court stated that the issue would be resolved based upon the testimony.
 {¶ 19} The trial court did not specifically make a determination as to whether Renrick had a separate property interest in the appliances and water softening system in its oral decision. However, from the division of property made by the trial court in its September 25, 2003 judgment entry — decree of divorce, it appears the court treated the property as marital property by dividing the proceeds from the sale of the home, including the value of the appliances and water softening system, equally between the parties. Since Renrick was asserting the appliances were separate property, he had the burden of proving such by a preponderance of the evidence, which he failed to do. Therefore, we hold that the trial court's determination that the appliances and water softening system located in the marital home were marital property is not against the manifest weight of the evidence. Accordingly, Renrick's first assignment of error is overruled.
 {¶ 20} In his second assignment of error, Renrick argues that the trial court abused its discretion in failing to award him his separate property interest with regard to the value of the property on which the marital home was constructed and the appliances and water softening system located in the marital home.
 {¶ 21} Once a trial court has determined the status of the parties' property, the court should normally award each spouse his or her separate property and then distribute the marital estate equally unless an equal division would be inequitable. R.C. 3105.171(D) and (C). The trial court is vested with discretion to do what is equitable under the facts and circumstances of each particular case. Cherry v. Cherry (1981),66 Ohio St.2d 348, 355, 421 N.E.2d 1293. An appellate court should not reverse the judgment of the trial court unless it appears that the trial court abused its discretion in dividing marital property. Martin v. Martin (1985), 18 Ohio St.3d 292,294-295, 480 N.E.2d 1112. An abuse of discretion is more than a mere error of judgment; it implies the court's attitude is arbitrary, unreasonable or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 22} As our discussion above explained, the trial court's determination that Renrick did not have a separate property interest in the property on which the marital home was constructed is supported by the evidence. Therefore, the trial court properly distributed the proceeds from the sale of the property equally between the parties. Likewise, since we find that the trial court's determination that the appliances and water softening system are also marital property, the trial court did not abuse its discretion by making an equal distribution of the value of the property. Accordingly, Renrick's second assignment of error is overruled.
 {¶ 23} Having found no merit with Renrick's assignments of error, we affirm the judgment of the Common Pleas Court of Union County.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.