OPINION
{¶ 1} Defendant-Appellant, Sir Lawrence E. Payne, appeals a judgment of the Hancock County Court of Common Pleas, finding Payne guilty of failure to comply with the order or signal of a police officer and sentencing him to five years of incarceration. Payne maintains that his conviction was against the manifest weight of the evidence. He also maintains that the trial court erred by sentencing him to the maximum term available for a third degree felony and by permanently revoking his driver's license.
 {¶ 2} After reviewing the entire record, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that Payne's conviction must be reversed and a new trial ordered. Additionally, we find that the trial court made the proper on the record findings at Payne's sentencing hearing and that the record supports these findings. Accordingly, both of Payne's assignments of error are overruled, and the judgment of the trial court is affirmed.
 {¶ 3} On October 10, 2003, at approximately 2:50 a.m., Officer David Gonzalez of the Findlay, Ohio Police Department was traveling westbound on Trenton Avenue, which is located within the city limits of Findlay. While traveling along Trenton Avenue, Officer Gonzalez noticed a blue/gray Ford Thunderbird being driven by Payne traveling in the opposite direction. He recognized Payne from previous encounters with him and knew that Payne did not have a valid driver's license. Consequently, Officer Gonzalez pulled in behind Payne and began to follow him.
 {¶ 4} As he followed the Thunderbird, Officer Gonzalez witnessed Payne commit several traffic violations. Based on the traffic violations and the fact that Payne did not have a valid driver's license, Officer Gonzalez activated his emergency lights and attempted to initiate a traffic stop; however, Payne did not stop his vehicle. Instead, he led Officer Gonzalez on a six and a half mile high speed chase that went through several residential neighborhoods and eventually left the Findlay city limits. During the chase, Payne passed through ten stop signs without stopping and traveled at speeds in excess of one hundred miles per hour.
 {¶ 5} Because of the dangerous nature of the intersections Payne was traveling through, Officer Gonzalez had to slow down in order to observe oncoming traffic and safely pass through the intersections. This led to Officer Gonzalez falling behind Payne; however, he was able to perceive at least the taillights of the Thunderbird the entire time.
 {¶ 6} Eventually, Payne crashed his vehicle into a piece of farm equipment. After the accident, he fled on foot, and the police were unable to locate him at or near the scene of the accident. Carrie Loubert, the sole passenger in the car with Payne during the chase, was still at the scene of the accident when Officer Gonzalez arrived. Loubert identified Payne as the driver of the car.
 {¶ 7} Ultimately, Payne was arrested and charged with failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B).[1] At the resulting trial, the jury found Payne guilty. The jury also found that Payne had caused a substantial risk of serious physical harm to persons or property. Consequently, Payne's conviction became a felony of the third degree under R.C. 2921.331(C)(5)(a)(ii).
 {¶ 8} At the sentencing hearing, the trial court found that Payne had committed the worst form of the offense and that he posed the greatest likelihood of recidivating. Accordingly, the trial court sentenced Payne to five years of incarceration, the maximum allowable for a felony of the third degree. R.C.2929.14(A)(3). The trial court also permanently revoked Payne's driver's license. From this judgment of sentence and conviction Payne appeals, presenting two assignments of error for our review.
 Assignment of Error I The jury verdict was against the manifest weight of theevidence as the state failed to prove identity and substantialrisk beyond a reasonable doubt.
 Assignment of Error II The trial court erred in sentencing appellant to a maximumsentence and permanently revoking appellant's operator'slicense.
 Assignment of Error I {¶ 9} In his first assignment of error, Payne contends that the jury's verdict was against the manifest weight of the evidence. Specifically, he claims that the manifest weight of the evidence did not support a finding by the jury that he was the driver of the Thunderbird that lead the police on a high speed chase. Alternatively, he argues that even if this Court affirms the jury's finding that he was the driver of the Thunderbird, the manifest weight of the evidence does not show that he caused a substantial risk of serious physical harm to persons or property.
 {¶ 10} Initially, we note that in order "[t]o reverse the judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." State v. Thompkins (1997), 78 Ohio St.3d 380, at paragraph four of the syllabus, citing Section 3(B)(3), ArticleIV of the Ohio Constitution.
 {¶ 11} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Thompkins, 78 Ohio St.3d at paragraph two of the syllabus, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 12} Payne was convicted of violating R.C. 2921.331(B), which prohibits operating "a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Payne does not dispute that the evidence presented at trial proves someone driving a blue/gray Ford Thunderbird purposely eluded Officer Gonzalez after receiving both visual and audible signals to stop. Furthermore, Payne admits that the evidence proves that the driver of the Thunderbird violated R.C. 2921.331(B). His claim is that the manifest weight of the evidence presented at trial does not prove that it was him driving the blue/gray Ford Thunderbird that fled from Officer Gonzalez.
 {¶ 13} In the case sub judice, the State presented ample evidence that Payne was the driver of the Thunderbird. Officer Gonzalez testified that he was able to identify Payne as the driver of the automobile. It was established at trial that Officer Gonzalez recognized Payne from previous encounters. When asked on cross-examination if he was sure that it was Payne driving the Thunderbird, Officer Gonzalez responded, "I was more than sure." (Trial Transcript page 368, line 22.) There was also evidence presented at trial that Payne was known to drive a blue/gray Ford Thunderbird registered under the name of Misty Brown. The undisputed evidence proved that the car involved in the high speed chase was a blue/gray Ford Thunderbird registered under the name of Misty Brown. Furthermore, Loubert, who was the only passenger in the Thunderbird during the chase, testified that Payne was driving the Thunderbird.
 {¶ 14} On appeal, Payne points out credibility issues concerning the testimony of Officer Gonzalez and Loubert. He focuses on the fact that Officer Gonzalez did not momentarily recognize Payne during a face to face meeting between the two that occurred after the chase in question. Payne also discusses the fact that Officer Gonzalez was only able to view the driver of the Thunderbird for a period of three to five seconds before passing the car. Regarding Loubert, Payne centers his attention on the fact that she was an underage person who had consumed alcohol prior to the chase and accident. Payne also mentions that Loubert was arrested at the site of the crash based on an outstanding warrant.
 {¶ 15} All of Payne's arguments come down to witness credibility. It is axiomatic that the credibility of witnesses is primarily an issue for the trier of fact. Ardrey v. Ardrey, 3rd Dist. No. 14-03-41, 2004-Ohio-2471, at ¶ 17, citing State v.DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Accordingly, this Court must afford the decision of the trier of fact concerning such credibility issues the appropriate deference. Id. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. State v.Parks, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citingState v. Twitty, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.
 {¶ 16} Looking at all of the evidence before us, we can not say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. While Payne does point out various facts that could tend to make the testimony of Officer Gonzalez and Loubert less reliable, these facts were entered into evidence for the jury to consider. Additionally, Payne argued these very same points and inferences to the jury in an effort to undermine the testimony of Officer Gonzalez and Loubert. The jury was in the best position to hear the testimony, observe the witnesses, and determine their reliability. Accordingly, we hold that the jury's finding that Payne was the driver of the blue/gray Ford Thunderbird was not against the manifest weight of the evidence.
 {¶ 17} Next, Payne asserts that the Jury's finding that he caused a substantial risk of serious physical harm to persons or property during the chase was against the manifest weight of the evidence.
 {¶ 18} R.C. 2921.331(C)(5) provides that:
A violation of division (B) of this section is a felony of thethird degree if the jury or judge as trier of fact finds any ofthe following by proof beyond a reasonable doubt:
* * *
(ii) The operation of the motor vehicle by the offender causeda substantial risk of serious physical harm to persons orproperty.
 {¶ 19} The facts at trial established that Payne led officers on a six and a half mile chase through residential and commercial neighborhoods. During this chase, Payne willfully ignored ten stop signs and exceeded the speed of one hundred miles per hour. Furthermore, the chase ended when Payne wrecked his car, causing his vehicle significant damage. Not only did Payne put his passenger, other drivers, and himself in substantial risk of serious harm through his reckless driving, but he actually did cause serious property damage when he crashed his automobile into a piece of farm equipment. Accordingly, we hold that the jury did not lose its way by finding that Payne had put persons and property at a substantial risk of serious injury due to his driving.
 {¶ 20} Having found that the jury's findings were not against the manifest weight of the evidence, Payne's first assignment of error is overruled.
 Assignment of Error II {¶ 21} In his second assignment of error, Payne asserts that the trial court erred by sentencing him to the maximum term of incarceration. He also argues that the trial court erred by permanently revoking his driver's license.
 {¶ 22} The structure of Ohio felony sentencing law provides that the trial court's findings under R.C. 2929.03, 2929.04,2929.11, 2929.12, 2929.13, and 2929.14, determine a particular sentence. State v. Martin (1999), 136 Ohio App.3d 355, 362. Compliance with those sentencing statutes is required. Id. Accordingly, the trial court must set forth the statutorily mandated findings and, when necessary, articulate on the record the particular reasons for making those findings. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one and two of the syllabus.
 {¶ 23} An appellate court may modify a trial court's sentence only if it clearly and convincingly finds either (1) that the record does not support the sentencing court's findings or (2) that the sentence is contrary to the law. R.C. 2953.08(G)(2); see, also, Martin, 136 Ohio App.3d at 361. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. State v. Schiebel (1990),55 Ohio St.3d 71, 74, citing Cross v. Ledford (1954),161 Ohio St. 469, 477. It requires more evidence than does a finding by a preponderance of the evidence, but it does not rise to the level of a finding beyond a reasonable doubt. Id. An appellate court should not, however, simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims." State v. Jones
(2001), 93 Ohio St.3d 391, 400.
 {¶ 24} Payne was convicted of failing to comply with the order or signal of a police officer in violation of R.C.2921.331(B). The jury specifically found that in violating this statute he had operated a motor vehicle such that he had caused a substantial risk of serious physical harm to persons or property. Under R.C. 2921.331(C)(5)(iii), such a finding by the jury makes a violation of R.C. 2921.331(B) a felony of the third degree. The permissible terms of imprisonment for a third degree felony are one, two, three, four, or five years. R.C. 2929.14(A)(3).
 {¶ 25} When a trial court imposes a prison term in a felony case it must impose the shortest term mandated unless it makes one of several findings. R.C. 2929.14(B). The relevant finding in the case herein is that Payne "previously had served a prison term." R.C. 2929.14(B)(1). This finding by the trial court is undisputed. Therefore, it was proper for the trial court to impose more than the minimum sentence.
 {¶ 26} A trial court is allowed to impose the maximum prison term authorized only if it makes one of several findings listed in R.C. 2929.14(C). These include the finding that the offender committed the worst form of the offense and the finding that the offender poses the greatest likelihood of committing future crimes. R.C. 2929.14(C).
 {¶ 27} In determining whether the offender committed the worst form of the offense and is likely to recidivate, the trial court must consider the nonexclusive list of recidivism and seriousness factors located in R.C. 2929.12. State v. Himes,
3rd Dist. No. 5-04-04, 2004-Ohio-4009, at ¶ 7; 2929.12(A). Trial courts should be given significant discretion in applying these and other statutory factors. State v. Yirga, 3rd Dist. No. 16-01-24, 2002-Ohio-2832, at ¶ 12, citing State v. Arnett
(2000), 88 Ohio St.3d 208, 215, citing State v. Fox (1994),69 Ohio St.3d 183, 193. Additionally, when sentencing an offender who has been convicted of violating R.C. 2921.331(B) with a specification under R.C. 2921.331(C)(5)(a), the trial court must consider the factors enumerated in R.C. 2921.331(C)(5)(b). These factors are:
(i) The duration of the pursuit;
 (ii) The distance of the pursuit;
 (iii) The rate of speed at which the offender operated themotor vehicle during the pursuit;
 (iv) Whether the offender failed to stop for traffic lights orstop signs during the pursuit;
 (v) The number of traffic lights or stop signs for which theoffender failed to stop during the pursuit;
 (vi) Whether the offender operated the motor vehicle duringthe pursuit without lighted lights during a time when lightedlights are required;
 (vii) Whether the offender committed a moving violation duringthe pursuit;
 (viii) The number of moving violations the offender committedduring the pursuit;
 (ix) Any other relevant factors indicating that the offender'sconduct is more serious than conduct normally constituting theoffense.
 {¶ 28} It is clear from the record that the trial court considered all of the required statutory factors at the sentencing hearing. After considering these factors, the trial found that Payne had committed the worst form of the offense and that he posed the greatest likelihood of committing future crimes. Consequently, the trial court found that the maximum sentence of five years was proper and sentenced Payne accordingly.
 {¶ 29} On appeal, Payne claims that the trial court erred in finding that he had committed the worst form of the offense. However, he fails to address the trial court's finding that he posed the greatest likelihood of committing future crimes. While the trial court made both findings, it was only required to find that either Payne had committed the worst form of the offenseor that he posed the greatest likelihood of committing future crimes before imposing the maximum sentence. R.C. 2929.14(C). Because we hold that the trial court's finding that Payne posed the greatest likelihood of recidivating is supported by the record, we need not discuss the trial court's finding regarding the worst form of the offense.
 {¶ 30} The evidence produced at the sentencing hearing showed that Payne had a lengthy criminal record spanning over twelve years and including numerous convictions as both a juvenile and an adult. These crimes included a concealed weapons conviction, four assault convictions, a gross sexual imposition conviction, a theft conviction, a drug trafficking conviction, a receiving stolen property conviction, two driving without an operator's license convictions, a fleeing and eluding conviction, and a failure to comply with the order or signal of a police officer conviction. It was also shown that Payne had served two previous prison terms and that he did not have an operator's license at the time he committed the offense herein. Furthermore, the trial court found that Payne showed no remorse for his actions.
 {¶ 31} Looking at the evidence in the record, we can not say that it clearly and convincingly does not support the trial court's finding that Payne poses a great likelihood of recidivism. Payne's record reflects not only an inability on his part to learn from past mistakes, but also a continued pattern of avoiding arrest and refusing to comply with the orders of police officers. Accordingly, the trial court's imposition of the maximum sentence is affirmed.
 {¶ 32} Lastly, Payne claims that the trial court erred by permanently revoking his driver's license.
 {¶ 33} The version of R.C. 4507.16 in effect at the time Payne committed the current offense[2] provided that:
(A)(1) The trial judge of any court of record, in addition toor independent of all other penalties provided by law or byordinance, shall suspend for not less than thirty days or morethan three years or shall revoke the driver's or commercialdriver's license or permit or nonresident operating privilege ofany person who is convicted of or pleads guilty to any of thefollowing:
* * *
(e) Willfully eluding or fleeing a police officer
 {¶ 34} It is within the trial court's discretion whether to permanently revoke a person's driver's license under this statute. State v. White (1987), 29 Ohio St.3d 39, at the syllabus. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 35} As discussed above, Payne had numerous prior convictions involving traffic offenses. In addition to those already listed above, he was convicted of driving with a suspended license, speeding, failure to wear a seat belt, and failure to obey a stop sign. The conviction herein was only the latest in a string of convictions related to driving. Furthermore, it was the third time he was convicted for running from the police in his automobile.
 {¶ 36} Based on all of the evidence above, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in permanently revoking Payne's license. Accordingly, Payne's second assignment of error is overruled, and the judgment of the trial court is affirmed.
 {¶ 37} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Shaw, P.J., and Cupp, J., concur.
[1] Because Payne's offense was committed in October of 2003, he was tried and convicted under the former version of R.C.2921.331. The current version of that statute did not go into effect until January 1, 2004. Accordingly, all references in this opinion to R.C. 2921.331 will be referring to the version of the statute in effect immediately prior to January 1, 2004.
[2] Like R.C. 2921.331, the current version of R.C. 4507.16
went into effect on January 1, 2004. Therefore, the version applicable to the facts herein is the one prior to the current version. All references made to R.C. 4507.16 in this opinion will be to that prior version.